**ANGOSTURA INTERNATIONAL LIMITED, et al.**

v.

**Steven MELEMED, et al.**

**No. 98–CV–1006(JMR/FLN).**

United States District Court, D. Minnesota.

Nov. 6, 1998.

Elliot S. Kaplan, Randall Tietjen, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for plaintiffs.

Robert Allan Gust, J. Michael Dady, Dady & Garner, Minneapolis, MN, for defendants.

ORDER

ROSENBAUM, District Judge.

Plaintiff, Angostura International, Limited ("Angostura"), terminated its sales relationship with one of its long-term product vendors, Steven Melemed and his affiliated company. Angostura sues to resolve the parties' rights resulting from the termination. Mr. Melemed seeks to arbitrate this matter under the provisions of the Minnesota Sales Representative Act, Minn.Stat. § 325E.37 ("MSRA").

Angostura seeks partial summary judgment, or, alternatively, an injunction barring arbitration under the MSRA. The motion was argued on August 14, 1998. For the reasons set forth below, plaintiff's motion is granted.

I. *Background*

Angostura[1] produces food and flavor-enhancing products, including bitters, juices, and sauces. Its products are sold primarily through food and liquor distributors. Defendants Steven Melemed and his company, Melemed Brokerage Company (collectively "Melemed"), served as plaintiff's brokers in Minnesota and neighboring states for more than 30 years. The parties' arrangement was never reduced to writing. After an exchange of letters, Angostura terminated their sales relationship on February 1, 1997.

After the relationship ended, Melemed invoked the MSRA, and filed a Demand for Arbitration with the American Arbitration Association. Under the MSRA, a sales representative is given his choice of forum in which a dispute can be resolved: he is permitted to seek arbitration, or he can proceed in court. On the contrary, however, a manufacturer or other covered principal is only allowed to seek arbitration. *See* Minn.Stat. § 325E.37, Subd. 5. Angostura filed this suit on March 24, 1997, asking this Court to declare its dispute with Melemed to be non-arbitrable. In reply, defendants counterclaimed and asserted their statutory arbitration rights.

II. *The Contracts Clause*

The MSRA, by its terms, "applies to any sales representative agreements entered into or renewed on or after" August 1, 1990. Laws 190, c. 539, § 5. When the MSRA was first enacted, the term "renewed" was undefined. The statute was amended in 1991 to define "renewed" as including any agreement "for an indefinite period ... [in which], with the principal's consent or acquiescence, the sales representative solicits orders on or after May 28, 1991." Laws 1991, c. 190, § 2(a)(2).[2]

Ordinarily, mere continuation of a prior relationship would not modify or redefine the relationship. *See O.R.S. Distilling Co. v. Brown–Forman Corp.*, 972 F.2d 924, 925–27 (8th Cir.1992). Melemed suggests, however, that his arrangement with Angostura was renewed because he continued to make sales after May 28, 1991, as contemplated in the revised statute. The fact that Melemed continued selling Angostura products after that date is not in dispute.

Angostura challenges the MSRA, and particularly, its 1991 amendment, under the Contracts Clause of the United States Constitution, which provides that: "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts ...." U.S. Const.

---

1. By agreement of the parties, Angostura Holdings, Ltd., Angostura International's ultimate holding company has been dismissed from this action. Only Angostura International remains.

2. This provision does not appear in the codification of the MSRA at Minn.Stat. § 325E.37. Accordingly, it is cited from the session law.

art. I, § 10, cl. 1.[3] Such a challenge is analyzed using a three-part test: First, "[t]he threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). Second, the Court considers whether there is "a significant and legitimate public purpose behind the regulation" causing the substantial impairment. *Energy Reserves Group,* 459 U.S. at 411, 103 S.Ct. 697. Finally, the Court must consider whether "the adjustment of 'the rights and responsibilities of the parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* at 412, 103 S.Ct. 697 (quoting *United States Trust Co. v. New Jersey,* 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).

■ If a state's statute is found to substantially impair a contract, without a significant and legitimate public purpose, it is unconstitutional, without consideration of the third prong. *See Anderson Marketing, Inc. v. Design House, Inc.,* No. 3–92–Civ–548 at 8 (D.Minn. Mar. 17, 1995); *McDonald's Corp. v. Nelson,* 822 F.Supp. 597, 609 (D.Iowa 1993), *aff'd sub nom, Holiday Inns Franchising, Inc. v. Branstad,* 29 F.3d 383 (8th Cir.1994).

A. *Substantial Impairment of an Existing Contractual Relationship*

■ The first step of the *Energy Reserves* test has three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *See General Motors v. Romein,* 503 U.S. 181, 186–87, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). The parties agree that, although their arrangement was unwritten, it was contractual—the defendant regularly sold An-

gostura products and received agreed-upon compensation for his work.

■ The Court determines as a matter of law that, if applicable, the MSRA's arbitration provision substantially impairs the parties' pre-existing arrangement. "[T]he contracts clause is designed to 'enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them.'" *Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1322 (8th Cir.1991) (quoting *Allied Structural Steel,* 438 U.S. at 245, 98 S.Ct. 2716).

Among Angostura's rights—absent the MSRA—was the right to seek redress in court. This included the legal process's appurtenant procedures, such as discovery. Similarly, prior to the MSRA, Angostura could select any forum it wished in which to resolve disputes with Melemed. To the extent the MSRA deprives Angostura of these rights, it is a substantial impairment.

Thus, the Court considers the second *Energy Reserves* factor: whether the MSRA's mandatory arbitration provision impairs Angostura's rights. The defendants, understandably, deny it does, claiming the Minnesota legislature has dissolved the question by defining it away. The legislative definition of contract "renewal" includes continued solicitation of sales, on the principal's behalf, after May 28, 1991. According to the defendants, after applying that definition, the prior agreement between the parties terminated; it was simply statutorily renewed under the MSRA's terms, and the new/renewed MSRA contract term does not offend the Contracts Clause.

The Court, however, rejects defendants' theory. Such a broad application of the MSRA's amended definition of "renewal" works an unconstitutional retroactive amendment of the pre-existing agreement. This view is in accord with that of the Honorable

---

3. The Minnesota Constitution provides similar protections. State Contract Clause challenges are analyzed using the same three-part test. *See*

*Jacobsen v. Anheuser–Busch, Inc.,* 392 N.W.2d 868, 872 (Minn.1986).

Michael J. Davis, of this District, who recognized that:

> [t]he object of any sales representation agreement. . .is to solicit and obtain orders for the manufacturer. Therefore, merely requiring a sales representative to solicit orders with the principal's consent or acquiescence to trigger application of the statute is nothing more than a continuing of the contractual relationship. This results in retroactive application of the statute.

*Anderson Marketing, Inc. v. Design House, Inc.,* No. 3–92–Civ–548 at 4 (D.Minn. Mar. 17, 1995) (*quoted in Anderson Marketing, Inc. v. Design House, Inc.,* 70 F.3d 1018, 1019 n. 3 (8th Cir.1995)). Such a retroactive application obviously impairs the pre-existing contract, going far beyond a mere incorporation of current law into a renewed contract. For this reason, the first prong of the *Energy Reserves* test supports a finding of a Contacts Clause violation.[4]

### B. *Public Purpose*

The second *Energy Reserves* inquiry asks whether the MSRA has "a significant and legitimate purpose ... such as the remedying of a broad and general social or economic problem." *Energy Reserves,* 459 U.S. at 411–12, 103 S.Ct. 697. This examination "guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412, 103 S.Ct. 697. Here again, the Court agrees with Judge Davis, that the MSRA "affects sales representatives and manufacturers, not society as a whole. This is special interest legislation that does not satisfy the second prong of the *Energy Reserves* opinion." *Anderson Marketing, Inc. v. Design House, Inc.,* No. 3–92–Civ–548 at 8 (D.Minn. Mar. 17, 1995).

Defendants argue that the MSRA is a legitimate Minnesota statute and is entitled to judicial deference. This deference, however-

er, is paired with the Court's concomitant duty to assure that state legislation is in accord with the supreme law of the land. When, as here, a statute runs afoul of the Constitution, legislative regularity does not suffice to protect the offending statute. A fair analysis makes clear that Melemed has failed to meet its burden to show a significant or legitimate public purpose behind the MSRA. The second *Energy Reserves* prong does not support defendants' position.

Because neither of the first two prongs of the *Energy Reserves* test are met, the MSRA is unconstitutional as retroactively applied to this contract, and the third prong need not be examined. The MSRA unconstitutionally infringes plaintiff's contractual expectations.

Having determined that the MSRA, as applied to these facts, contravenes the Contracts Clause, the Court finds the matter is properly placed. Therefore, the collateral proceeding in the arbitral forum is properly enjoined.

### III. *The Statute*

Notwithstanding the previous determination, the Court considers it prudent to note that the plain language of the MSRA may well compel the same result. The statute provides, in relevant part, that:

> [a] sales representative may ... submit a matter to arbitration, or in the alternative, at the sales representative's option prior to the arbitration hearing, the sales representative may bring the sales representative's claims in a court of law, and in that event the claims of all parties must be resolved in that forum.

MSRA, Minn.Stat. § 325E.37, Subd. 5(a).

The defendants chose to counterclaim in response to the plaintiff's suit, rather than proceed in the arbitral forum. By doing so, they placed the matters in this Court, and laid them under its purview. Applying the

---

4. The Minnesota Court of Appeals made a contrary determination. It relied on the MSRA's extended notice period and its good cause requirement for termination of a sales representative agreement. *See Midwest Sports Mktg., Inc. v. Hillerich & Bradsby,* 552 N.W.2d 254, 264–65 (Minn.Ct.App.1996). Although its views are clearly to be considered in determining state law, decisions of the Minnesota Court of Appeals are not binding on this Court. *See Haugen v. Total Petroleum, Inc.,* 971 F.2d 124, 126 (8th Cir.1992). Neither *Midwest Sports Mktg.,* nor *Anderson Marketing,* directly considered the mandatory arbitration provision at issue here. The Court finds Judge Davis's opinion more persuasive, and adopts its analytic.

clear language of the statute, all claims must be resolved in this Court, not in arbitration. Defendants protest that their counterclaims were not truly by choice because they are, according to them, compulsory counter- claims. Although it may be anomalous, the Court notes that the statute makes no dis- tinction between compulsory and permissive counterclaims or, for that matter, among any sort of claims.

## IV. *Conclusion*

For the reasons set forth, herein, IT IS ORDERED that:

1. Plaintiff's motion for partial summary judgment is granted.

2. Defendants' proposed arbitration, pur- suant to MSRA, Minn.Stat. § 325E.37, is en- joined.