**HOLIDAY HOSPITALITY FRANCHISING, INC., Plaintiff,**

v.

**H–5, INC., and Donald Herzog, Defendants.**

**No. CIV 99–1494(DWF/RLE).**

United States District Court, D. Minnesota.

March 26, 2001.

Peter Gray, Esq., Rider, Bennett, Egan & Arundel, Minneapolis, MN, appeared on behalf of Plaintiff.

Philip Young, Esq., Moss & Barnett, Minneapolis, MN, appeared on behalf of Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on March 16, 2001,

pursuant to cross motions for partial summary judgment. In the Complaint, Plaintiff alleges claims for breach of contract and unjust enrichment; Defendants have brought a counterclaim seeking a declaration that Plaintiff's claim for lost profits damages is barred by the Minnesota Franchise Act's prohibition against liquidated damages clauses. For the reasons set forth below, Plaintiff's motion is granted and Defendants' motion is granted in part and denied in part.

## Background

Plaintiff Holiday Hospitality Franchising, Inc. ("Holiday") is a Georgia corporation which licenses hotels throughout the country to operate as Holiday Inn franchises. Defendant H–5, Inc. ("H–5") is a Minnesota corporation which, until recently, owned a hotel in Eveleth, Minnesota. In September of 1990, Holiday and H–5 entered into a 10–year license agreement. Under the terms of the agreement, H–5 acquired the rights to use certain marks registered to Holiday to identify the Eveleth Hotel as a Holiday Inn; Holiday also agreed to provide certain marketing and reservation services for H–5. In return, H–5 paid certain monthly fees to Holiday [1] and contracted to maintain the hotel according to fairly rigid standards established by Holiday. Defendant Donald Herzog ("Herzog") guaranteed H–5's financial obligations under the license agreement.

At the heart of the present dispute is a provision of the license agreement related to the premature termination of the license agreement. Specifically, Paragraph 14 of the agreement states:

14. *Termination.* The License will terminate without notice September 5, 2000, subject to earlier termination as stated below. The parties recognize the difficulty of ascertaining damages resulting from premature termination of the License, and have provided for liquidated damages which represent their best estimate as to the damages arising from circumstances in which they are provided....

\* \* \* \* \* \*

(c) *Post Termination* .... If the License terminates pursuant to [notice from the Licensor], Licensee will promptly pay Licensor (as liquidated damages for the premature termination only, and not as a penalty or as damages for breaching the Agreement or in lieu of any other payment), a lump sum equal to the total amounts required under Section 6 (Fees, etc.) [described in footnote 1, *supra* ] during the 36 calendar months of operation preceding the termination or such shorter period as equals the unexpired License Term at the time of termination.

Holiday alleges that H–5 failed to maintain the Eveleth hotel in accordance with the franchise guidelines established by Holiday. In 1998, after H–5 allegedly failed three maintenance evaluations and after H–5 had fallen behind in the payment of its monthly fees, Holiday terminated the license agreement, effective December 28, 1998. Holiday then made a demand for damages from H–5 in an amount calculated pursuant to the formula in ¶ 14(c), based on the 20 months and 6 days preceding the franchise termination.[2]

---

1. Specifically, H–5 contracted to pay a royalty of 4% of the gross revenues for rental of guest rooms; a "marketing contribution" of the greater of 1.5% of the gross rooms revenue or $.08 per guest room per night; a "reservation contribution" of the greater of 1% of the gross rooms revenue or $.06 per guest room per night; and a "Holidex fee" of $5.97 for each guest room at the hotel.

2. At the time of termination, there were 20 months and 6 days remaining in the term of the agreement.

Holiday brought this action for breach of contract and unjust enrichment. Holiday asserts lost profits in an amount calculated pursuant to the formula in ¶ 14(c) and $71,735.56 in outstanding licensing fees. H–5 has counterclaimed for a declaration that Holiday's demand for lost profits is really a claim for liquidated damages which is prohibited by Minnesota law. *See* Minn.Stat. § 80C.01–22.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R.Civ.P. 1. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik,* 47 F.3d at 957.

### 2. Defendants' Motion

Defendants seek summary judgment on Plaintiff's claim for breach of contract on the grounds that Plaintiff has only established entitlement to liquidated damages which are precluded by the Minnesota Franchise Act, Minn.Stat. § 80C.01–22. Defendants further seek summary judgment on Plaintiff's claim for unjust enrichment on the grounds that such a claim cannot be supported where there is a valid contract defining the rights and obligations of the parties.

### A. Liquidated Damages

■ There is no question that the Minnesota Franchise Act precludes liquidated damages for premature termination of the franchise license agreement. Furthermore, there is no question that ¶ 14(c) of the license agreement at issue purports to be a liquidated damages provision. However, there is no provision of Minnesota law or the contract between the parties which prevents Holiday from seeking other contractual damages, such as damages for lost profits. *See, e.g., Hughes v. Sinclair Marketing, Inc.,* 389 N.W.2d 194, 199–200 (Minn.1986) (the Minnesota Franchise Act does not preclude recovery of lost profits).

■ Indeed, Holiday contends that the calculation they have performed, although based upon the formula described in ¶ 14(c), represents a reasonable estimate of lost future profits. H–5 argues that the ¶ 14(c) calculation fails to take into consideration certain relevant factors—such as the declining revenues of the Eveleth hotel and the costs Holiday avoided because it no longer had to provide franchise services to H–5—in arriving at a projection for future damages. These arguments, how-

ever, merely raise questions of fact (albeit serious ones) which are more appropriate for cross-examination at trial.

Ultimately, rightly or wrongly, Holiday has created a record which suggests that the calculation in ¶ 14(c) is both a liquidated damages measure *and* a reasonable method for calculating actual lost profits. While the Court will not allow Holiday to argue at trial that it is entitled to the damages described in ¶ 14(c) simply because the contract states that it is entitled to such damages; such an argument would render the damages liquidated damages. However, the Court will not penalize Holiday for attempting to set forth a fair measure of liquidated damages, one which comports with expected actual losses, by finding that the ¶ 14(c) calculation is entirely off-limits because it is labeled "liquidated damages" in the contract. Rather, Holiday may argue at trial that the calculation in ¶ 14(c) is a legitimate and reasonable method for calculating expected actual damages, assuming, of course, that the proper foundation can be established for such an opinion, as well as any Article 7 considerations, pursuant to the Federal Rules of Evidence.

## B. Unjust Enrichment

 Unjust enrichment is an equitable theory which cannot be asserted where the rights of the parties are governed by a valid contract. *See U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn.1981). Plaintiff offers two reasons why summary judgment should nevertheless be denied on its claim of unjust enrichment.

First, Plaintiff suggests that it has pled unjust enrichment in the alternative, in the event that the Court finds there is no valid contract. However, there is no contention whatsoever that the contract between the parties is not valid. The only point of contention is the propriety of the Plaintiff relying upon the liquidated damages clause for calculating a remedy for Defendants' breach. As discussed above, that provision, as a liquidated damages provision, cannot provide a basis for relief under Minnesota law. However, that conclusion in no way impedes Plaintiff's ability to state a claim for lost profits, even making reference to ¶ 14(c) as a reasonable method for calculating those expected actual damages. In short, the parties seem to agree that there is a valid contract between the parties and, to the extent that Plaintiff can demonstrate any damages at all, Plaintiff has an adequate remedy at law.

Second, Plaintiff suggests that unjust enrichment is an available basis for recovery because the contract states that "[t]he remedies provided in this Agreement are not exclusive, and its provisions are severable." Plaintiff cites *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 145 (Minn. 1986), for the proposition that equitable relief may be provided in the face of a valid contract where the contract is not a full agreement concerning the parties' rights and remedies.[3] In *Frankson*, however, the contract at issue was ambiguous as to the consideration due the performing party. Here, there is no ambiguity as to the rights and obligations of each party. Rather, the point of dispute is whether H–5's breach of those obligations imposed any real damage on Holiday. If that disagreement alone were sufficient to invoke the *Frankson* exception, the rule would essentially evaporate; the existence and amount

---

**3.** The Plaintiff also cites *Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 269 (Minn.App.1996), for this same proposition; the *Midwest Sports* court, however, merely quoted from *Frankson* and then went on to find that the Frankson exception did not apply to the facts before it.

of actual damages is an issue in the vast majority of litigated contract disputes.

The Court finds that, given the existence of a comprehensive contract between the parties, the validity of which is not in dispute, there is no legal justification for Plaintiff's claim of unjust enrichment. Summary judgment as to that claim is appropriate.

### 3. Plaintiff's Motion

Holiday seeks summary judgment on H–5's counterclaim for declaratory judgment; Holiday also requests partial summary judgment against H–5 in the amount of $71,735.56—the undisputed amount owed to Holiday for various fees which accrued prior to termination of the license agreement.

H–5 has indicated that it does not oppose summary judgment as to the $71,735.56 in past due royalties, etc. Accordingly, the Court will grant summary judgment in favor of Holiday with respect to those damages.

■ With respect to H–5's claim for declaratory relief, the Court also grants summary judgment. While the Court agrees that the Minnesota Franchise Act precludes a claim for liquidated damages in a case of a prematurely terminated license agreement, the Court has also found that the calculation in ¶ 14(c) may be utilized by Holiday to demonstrate actual damages (although H–5 and Herzog are free to challenge the propriety of that calculation). Again, the Court agrees that Holiday may not simply point to the calculation in ¶ 14(c) and argue that it is entitled to that amount of damages simply because the contract says so. However, assuming that the proper foundation can be established, as noted above, the Court finds that Holiday is free to argue that the calculation in ¶ 14(c) represents a reasonable estimate of actual damages in the form of lost profits. As a result, the Court finds that H–5 is not entitled to a declaration that Holiday cannot allege lost profits or cannot in any way reference the factors itemized in ¶ 14(c). The Court assumes this entire issue will be revisited prior to or during a trial of this matter by way of a motion *in limine* and an appropriate Rule 103 offer of proof.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 25) is **GRANTED;**

2. Summary judgment in the amount of $71,735.56 is entered against Defendant and in favor of Plaintiff for outstanding fees and royalties accrued before December 28, 1998;

3. **The COUNTERCLAIM is DISMISSED WITH PREJUDICE;** and

4. Defendants' Motion for Partial Summary Judgment (Doc. No. 14) is **GRANTED IN PART** and **DENIED IN PART** as follows:

 a. Defendants' motion as to Count III of the **COMPLAINT** ("Unjust Enrichment") is **GRANTED** and that claim is **DISMISSED WITH PREJUDICE;** and

 b. Defendants' motion is in all other respects **DENIED.**