**Pamela KRUEGER, Appellant,**

**Diamond Dust Contracting, LLC, Plaintiff,**

v.

**ZEMAN CONSTRUCTION COMPANY, Respondent.**

No. A08–0206.

Court of Appeals of Minnesota.

Dec. 30, 2008.

Andrew P. Muller, Muller, Muller & Assoc., PLLC, Minneapolis, MN; and John A. Klassen, John A. Klassen, P.A., Minneapolis, MN, for appellant.

Michael Lapicola, Daniel G. Prokott, Faegre & Benson LLP, Minneapolis, MN, for respondent.

Leslie L. Lienemann, Culberth & Lienemann, LLP, St. Paul, MN; and Dorene R. Sarnoski, Dorene R. Sarnoski Law Office, Minneapolis, MN, for amicus curiae National Employment Lawyers Association, Minnesota Chapter.

Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and BJORKMAN, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's dismissal of her claim for discrimination in the performance of a contract under Minn. Stat. § 363A.17(3), arguing that she has standing, individually, to bring a claim of business discrimination in the performance of a contract entered into between her solely owned limited liability company and a corporation whose managers allegedly discriminated against her. Because under the plain meaning of Minn.Stat. § 363A.17(3) a person alleging discrimination in the performance of a contract must be a party to that contract, appellant does not have standing to bring a business-discrimination claim, and we affirm.

## FACTS

Appellant Pamela Krueger is the sole owner-member and operator of plaintiff Diamond Dust Contracting, LLC (Diamond Dust), a Minnesota limited liability company engaged in the drywall and sheetrock business. In December 2005, Diamond Dust entered into a standard subcontractor agreement under which it agreed to provide to respondent Zeman Construction Company certain materials and labor for a multi-unit, residential construction project. Diamond Dust began work in January 2006.

Appellant, who personally worked on the project, alleges that respondent's male managers repeatedly subjected her to various forms of outrageous sex discrimination and sexual harassment. Although she reported her allegations to respondent, it took no corrective or remedial action. In November 2006, appellant and Diamond Dust stopped working on the project and both sued respondent, alleging that it engaged in discrimination in the performance of a contract under Minn.Stat. § 363A.17(3) (business-discrimination claim).

Respondent moved to dismiss appellant's claim under Minn. R. Civ. P. 12.02(e). Respondent also moved to transfer venue from Hennepin County to Wabasha County, where the dispute arose and where Diamond Dust's mechanic's lien foreclosure action against respondent was

pending. The district court granted both motions. In this appeal, appellant challenges the dismissal of her discrimination claim.

## ISSUE

Did the district court err in dismissing appellant's claim for discrimination in the performance of a contract under Minn. Stat. § 363A.17(3), on the ground that appellant does not have standing because she is not a party to the contract on which the claim was based?

## ANALYSIS

■ An appellate court reviews a dismissal on the pleadings under Minn. R. Civ. P. 12.02(e) de novo. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003). Likewise, issues of statutory interpretation are reviewed de novo. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn.2004).

■■ In considering an appeal from a rule 12.02(e) dismissal for failure to state a claim, we "must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah*, 663 N.W.2d at 553. "[A] pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist that would support granting the relief demanded." *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963) (footnote omitted). "In reviewing cases dismissed for failure to state a claim on which relief can be granted, the only question before us is whether the complaint sets forth a *legally sufficient* claim for relief." *Elzie v. Comm'r of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980) (em-

phasis added) (quotation omitted). Thus, we accept as true appellant's claims of sex discrimination and sexual harassment.

This case involves a claim of business discrimination. The threshold issue presented, and one of first impression in this court, is whether the Minnesota Human Rights Act (MHRA) allows a person to assert a claim of business discrimination under Minn.Stat. § 363A.17(3), in the performance of a contract against a defendant with whom the plaintiff does not have a contractual relationship. To address this issue, we must analyze the language of the MHRA. Minn.Stat. §§ 363A.001–.41 (2006).

We begin with an analysis of the MHRA under which appellant asserts business discrimination against respondent. The pertinent section of the MHRA provides:

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service:
>
> . . . .
>
> (3) to intentionally refuse to do business with, to refuse to contract with, or *to discriminate in the basic terms, conditions, or performance of the contract* because of a person's race, national origin, color, sex, sexual orientation, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose.

Minn.Stat. § 363A.17 (emphasis added). Several aspects of this analysis are not in dispute. First, under the statute, respondent, a corporation, is "a person engaged in a trade or business." *See id.; see also* Minn.Stat. § 363A.03, subd. 30 (defining "person" to include corporations). Second, "[t]he legislature has indicated that the MHRA should be liberally construed for the accomplishment of its purposes."

*Cummings v. Koehnen,* 568 N.W.2d 418, 422 (Minn.1997) (citing earlier version of statute); *see* Minn.Stat. § 363A.04 (containing current version of section mandating liberal construction of the MHRA).

 We next set out the standard of review for statutory construction. "The touchstone for statutory interpretation is the plain meaning of a statute's language." *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005). "[W]hen the words [of a statute] are clear, explicit, unambiguous, and free from obscurity, courts are bound to expound the language according to the common sense and ordinary meaning of the words." *State ex rel. Gardner v. Holm,* 241 Minn. 125, 129, 62 N.W.2d 52, 55 (1954) (quoting *Minn. & Pac. R.R. Co. v. Sibley,* 2 Minn. 13, 20, 2 Gil. 1, 9 (1858)). "When a statute's meaning is plain from its language as applied to the facts of the particular case, a judicial construction is not necessary." *ILHC of Eagan,* 693 N.W.2d at 419. The courts apply the rules of grammar and consider all words and phrases in the statutory language when possible so that none is deemed superfluous. *Id.*

We now address the relevant portions of the MHRA. Any person aggrieved by a violation of the MHRA may bring a civil action. Minn.Stat. § 363A.28, subd. 1. In the action, an aggrieved person may seek "redress for an unfair discriminatory practice." Minn.Stat. § 363A.33, subd. 1. The legislature has defined "unfair discriminatory practice" to mean "any act described in sections 363A.08 to 363A.19 and 363A.28, subdivision 10." Minn.Stat. § 363A.03, subd. 48. And we note that since the first version of MHRA was enacted in 1955, the legislature has continually revised and amended its provisions as it found appropriate. 1955 Minn. Laws ch. 516, at 802–12; *see, e.g.,* 1973 Minn. Laws ch. 729, § 3, at 2161–62 (adding discrimination based on marital status to the definition of unfair discriminatory practices in employment); 2001 Minn. Laws ch. 194. § 2, at 724 (adding discrimination based on national origin to section defining unfair discriminatory practices in business). In doing so, the legislature has specifically and painstakingly defined what constitutes an "unfair discriminatory practice" in a variety of settings as follows: practices relating to employment, Minn.Stat. § 363A.08 (also referred to as unfair employment practices); real property, Minn. Stat. § 363A.09; real property disability discrimination, Minn.Stat. § 363A.10; public accommodations, Minn.Stat. § 363A.11; public services, Minn.Stat. § 363A.12; educational institutions, Minn.Stat. § 363A.13; aiding, abetting and obstructing related to unfair employment practices, Minn.Stat. § 363A.14; reprisals, Minn. Stat. § 363A.15; credit discrimination, Minn.Stat. § 363A.16, business discrimination, Minn.Stat. § 363A.17; discrimination against persons who are blind or deaf or who have physical and sensory disabilities, Minn.Stat. § 363A.19; and discrimination as shown by disparate impact, Minn.Stat. § 363A.28, subd. 10. Our task is to construe the relevant provisions of the MHRA, keeping in mind the liberal interpretation afforded the act.

 This case involves appellant's claim of business discrimination against respondent under Minn.Stat. § 363A.17(3). At issue is whether one who claims business discrimination in the performance of a contract under section 363A.17(3) must have a contractual relationship with the defendant. Here, the question is whether appellant, who does not have a contractual relationship with respondent, has standing to bring this lawsuit.

We now review the meaning of standing in the context of the MHRA. "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 493 (Minn.1996). Standing may be "acquired in two ways: either the plaintiff has suffered some 'injury-in-fact' or the plaintiff is the beneficiary of some legislative enactment granting standing." *Id.* When a civil rights law is violated, the plaintiff need not establish a separate "legal" injury, because "the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, *in the absence of statutory language requiring more.*" *Potter v. LaSalle Court Sports & Health Club*, 384 N.W.2d 873, 875 (Minn.1986) (emphasis added) (quotation omitted). Thus, standing is not conferred by an act of discrimination alone when the language of the relevant provision of the MHRA requires more. *Id.*

Applying this discussion of standing to the present case, we examine section 363A.17(3), which provides that it is an unfair discriminatory practice for a person engaged in business (1) "to intentionally refuse to do business with," (2) "to refuse to contract with," or (3) "to discriminate in the basic terms, conditions, or performance of the contract." We first review what appellant is not claiming. Appellant does not claim that respondent discriminated against her under the first two clauses by intentionally refusing to do business with her or by refusing to enter into a contract with her because of her sex, either of which constitutes an unfair discriminatory practice under the first two clauses of section 363A.17(3). In fact, respondent did enter into a contract with Diamond Dust. Appellant also does not claim that respondent discriminated against her under the third clause as to the basic terms or conditions of the contract. What appellant does claim is that respondent discriminated against her *personally* in the performance of its contract with Diamond Dust, a contract to which she is not a party.

Appellant argues that the plain language of section 363A.17(3) does not require plaintiff to be a party to a contract with the defendant. In support of her argument, appellant focuses on the legislature's use of the disjunctive, "or," when referring to business discrimination "in the basic terms, conditions, or performance of the contract." She contends that by using this disjunctive, the legislature stated two alternate bases for liability: first, discrimination in writing a contract's terms or conditions, which involves only the parties to the contract; and, second, discrimination against persons who may be performing a contract, which includes anyone involved in the day-to-day carrying out of the contract, regardless of whether that person is a party to the contract. Otherwise, appellant argues, the term "or performance" is rendered superfluous.

We do not dispute that "or" is disjunctive. *See Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 385 (Minn.1999) (stating that "or" is generally construed to be disjunctive absent any context indicating it should be construed to be conjunctive). But the legislature's use of a disjunctive does not resolve the question. As the district court stated, the "touchstone" for statutory interpretation is the plain meaning of the statute's language. *See ILHC of Eagan*, 693 N.W.2d at 419 (referring to this standard). Using the plain-meaning analysis, we agree with appellant that the first two clauses of section 363A.17(3) do not require a contractual relationship to confer

standing to bring a business-discrimination action because, in those circumstances, the defendant intentionally refuses to enter into such a relationship with the plaintiff. The third clause, at issue here, applies when a contract exists and the plaintiff alleges unfair discrimination with respect to the contract's terms, conditions, or performance. The disjunctive "or" is used to indicate that a contracting party may not discriminate as to the contract's basic terms or conditions or performance.

■ We do not agree with appellant's interpretation under which a business-discrimination claim could be brought by anyone involved in the performance of a business contract or against any wrongdoer somehow involved in the performance of a business contract. This broad interpretation urged by appellant is not supported by the statutory language and, if adopted, would result in no discernible limit as to what could be an unfair discriminatory practice under section 363A.17(3). The dissent reasons that because the statute allows any "person aggrieved" to bring a claim under Minn.Stat. § 363A.28, subd. 1, any person subjected to discrimination in the performance of a contract has standing to bring a business-discrimination claim. But the statute only allows such a person to seek "redress for an unfair discriminatory practice." Minn.Stat. § 363A.33, subd. 1. And an "unfair discriminatory practice" is defined differently for each of the types of discrimination "described in sections 363A.08 to 363A.19 and 363A.28, subdivision 10." Minn.Stat. § 363A.03, subd. 48. For example, one who is not an employee of a company may not bring an age-discrimination claim against that company under the MHRA. *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 260 (Minn.App.

1996), *review denied* (Minn. Sept. 20, 1996). Similarly, a sales agency does not have standing to bring an age-discrimination case on behalf of its owner and sub-agents. *Id.* at 262. As analyzed above, we conclude that to have standing to assert a business-discrimination claim under Minn. Stat. § 363A.17(3), appellant must show both that respondent committed a discriminatory act in the performance of a contract and that she—not her limited liability company—has has a contractual relationship with respondent. *See Potter*, 384 N.W.2d at 875 (holding that when a civil rights law is violated, the plaintiff may establish standing based on the act of discrimination unless statutory language requires more).

■ We are guided in our interpretation of the MHRA by federal cases interpreting federal discrimination statutes, such as Title VII, when those statutes have similar language; we have declined to follow federal law when the statutory language differs. *Cummings*, 568 N.W.2d at 422 n. 5. The United States Supreme Court recently addressed a standing question under 42 U.S.C. § 1981 (2000) similar to the issue raised here under section 363A.17(3). *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 472–74, 126 S.Ct. 1246, 1247–48, 163 L.Ed.2d 1069 (2006). There, the Supreme Court addressed "whether a plaintiff who lacks any rights under an existing contractual relationship with the defendant, and who has not been prevented from entering into such a contractual relationship," may sue under section 1981 after the defendant breached its contracts with the plaintiff's company because of racial animus toward the plaintiff, the president and sole shareholder. *Id.* The Supreme Court held that any claim brought under section 1981(a), the "make

and enforce contracts" provision, "must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." 546 U.S. at 476, 126 S.Ct. at 1249.

Appellant asserts that the language of section 1981 differs significantly from the text of the MHRA so that caselaw interpreting it is not relevant. We recognize that section 1981(a) is narrower in some respects than section 363A.17 because section 1981(a) applies only to racial discrimination, while section 363A.17(3) applies to discrimination based on "a person's race, national origin, color, sex, sexual orientation, or disability," unless based on a "legitimate business purpose." On the other hand, section 1981(a) is broader than section 363A.17(3) in other respects because section 1981(a) protects not only the right to "to make and enforce contracts," but also the right "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). We note that the dissent cites a federal case, *Moonblatt v. Dist. of Columbia,* 572 F.Supp.2d 15, 25 (D.D.C.2008), for the proposition that a contractual relationship is not a prerequisite to a viable claim under section 1981(a). But the *Moonblatt* court did not apply the "make and enforce contracts" clause in section 1981(a); it applied the "full and equal benefit" clause in reaching its decision. *Id.* (holding that where former prison inmate's discrimination claim against private contractor hired to run detention center fell under the "full and equal benefit" clause of section 1981, rather than the "make and enforce contracts" clause, a contractual relationship was not a prerequisite to a viable claim.). Thus, *Moonblatt* is not relevant here. *See also Mazloum v. Dist. of Columbia Metro. Police Dep't,* 522

F.Supp.2d 24, 38 (D.D.C.2007) (holding that victim of beating carried out by off-duty police officers in collaboration with nightclub's employees was not required to identify a contractual relationship with off-duty police officers where the claim arose out of the "full and equal benefit" clause rather than the "make and enforce contracts" clause).

Here, the relevant provision of section 1981 is that which protects the equal rights of all persons to "make and enforce" contracts, which is defined as including "the making, *performance,* modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(a), (b) (emphasis added). This language is certainly similar to the language of section 363A.17(3), at issue here, and we will review caselaw addressing allegations of discrimination in contracts under section 1981 for guidance as appropriate. *See Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.,* 987 F.Supp. 741, 745 (D.Minn.1997) (addressing claims of discriminatory interference with contracts under section 1981 and the earlier codification of section 363A.17 together, without distinguishing between the analysis of the two).

In *Domino's,* the Supreme Court reasoned that:

> Absent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to *somebody's* contract. We have never read the statute in this unbounded—or rather, *peculiarly* bounded—way.

Nor has Congress indicated that we should.

546 U.S. at 476–77, 126 S.Ct. at 1250 (citations omitted). While the Supreme Court in *Domino's* clearly did not hold that a contractual relationship must be identified for all section 1981 claims, it did hold that where a contract is the basis of a section 1981 claim, the plaintiff must have rights to assert under the contract. *Id.* at 476, 126 S.Ct. at 1249. Similarly, as we have already concluded under a plain-meaning analysis, our legislature intended that only those who suffer discrimination *and* who have a contractual relationship with the defendant have standing to sue for business discrimination under the "basic terms, conditions, or performance of the contract" provision of section 363A.17(3).

We next examine appellant's argument that if the legislature intended to limit the statute to those who are parties to the contract, it would have explicitly included language to that effect. While additional language might serve to reinforce our conclusion that a contractual relationship is required to assert a business-discrimination claim based on a contract, we reach the same result under our plain reading of the statute. Similarly, in *Domino's*, the Court noted that Congress, in revising section 1981 in response to a holding by the Supreme Court in an earlier case, had let stand the focus on contract obligations, and, in fact, had "positively reinforced that element by including in the new § 1981(b) reference to a *'contractual relationship.'*" *See id.* at 477, 126 S.Ct. at 1250

Next, appellant contends that requiring a contractual relationship would unfairly preclude persons who own their own businesses that execute the contracts from recovering damages for unfair discriminatory practices, particularly for claims of emotional distress for which a business entity would be unlikely to recover. Appellant asserts that this would leave one class of individual business owners—those operating as a legal entity such as herself—unprotected from discrimination and harassment. *See Cummings,* 568 N.W.2d at 422–23 (rejecting construction of sexual-harassment statute that would leave two classes of employees unprotected from sexual harassment). But, unlike *Cummings,* the case before this court does not address an issue of whether two classes of employees, who otherwise have standing to bring the action, would be unprotected; instead, the question here is whether appellant has standing to bring the action at all.

Appellant also relies on *Costilla v. State,* 571 N.W.2d 587, 592 (Minn.App.1997), *review denied* (Minn. Jan. 28, 1998). In *Costilla,* also addressing a matter of first impression, this court held that under the MHRA, an *employee* may bring an action against her *employer* for sexual harassment by a non-employee when the employer is aware that the employee is subject to sexual harassment, yet fails to take timely and appropriate actions to protect its employee. *Id.* at 591–92. Thus, there was again no dispute as to standing and appellant's reliance on *Costilla* as support for her right to assert a claim against respondent is misplaced.

Appellant argues that it is unfair to deprive her of a potential MHRA remedy. But this is not a question of fairness or unfairness; instead this is a question of whether appellant personally has alleged an unfair discriminatory practice under the business discrimination. This type of question may be raised under any of the statutory sections in which the legislature has defined an unfair discriminatory practice.

■ Appellant's limited liability company, and not appellant personally, entered into a contract with respondent. *See* Minn.Stat. § 322B.20, subd. 7 (2006) (limited liability company may make contracts). Because a member of a limited liability company is protected from personal liability for the company's acts, debts, liability, and obligations, unless the corporate veil is pierced, appellant gained protection from the decision. *See* Minn.Stat. § 322B.303, subds. 1, 2 (2006) (setting forth these provisions). Indeed, the avoidance of personal liability is a legitimate reason for forming a limited liability company. *See Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979) (stating that avoidance of personal liability is a valid reason for incorporation).

But appellant also gave up some rights. As the Supreme Court noted in addressing whether section 1981 required a contractual relationship, "the whole purpose of corporation and agency law [is] that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." *Domino's,* 546 U.S. at 477, 126 S.Ct. at 1250. The Court pointed out that while the corporate form and rules of agency protected plaintiff's personal assets, they "similarly deny him rights under those contacts." *Id.* at 477, 126 S.Ct. at 1251. Here, while appellant's choice of executing the contract with respondent through her limited liability company protects her from personal liability under the contract, it also precludes her individual discrimination claim under section 363A.17(3) based on the performance of the contract. Had appellant, as an individual, contracted with respondent, she would have standing to bring a claim under section 363A.17(3).

The dissent asserts that if appellant is precluded from suing under section 363A.17(3), she and others in her position, who are aggrieved "employees" of a subcontractor, are not protected from egregious discrimination inflicted by a general contractor at a construction site. While dismissal of appellant's claim may seem harsh, the legal protection afforded appellant by contracting her solely owned limited liability company also precludes her standing to bring this lawsuit. Again, unlike *Cummings,* 568 N.W.2d at 422–23, the case before this court does not address an issue of whether two classes of employees, who otherwise have standing to bring the action, would be unprotected; instead, the question here is whether appellant is one of those persons who has standing to bring the action at all. It is within the legislature's power to amend section 363A.17(3) to provide standing for someone in appellant's position, and we must leave that decision to the legislature.

In conclusion, appellant does not have standing to assert business discrimination in the performance of a contract under section 363A.17(3), because she does not have contractual relationship with respondent. We note, however, that the action by appellant's limited liability company against respondent under section 363A.17(3) is still pending, as is its mechanic's lien foreclosure action against respondent.

## DECISION

We affirm the decision of the district court to dismiss appellant's lawsuit for failure to state a claim.

**Affirmed.**

MINGE, Judge (dissenting).

I respectfully dissent.

The central issue on appeal is whether, because appellant Pamela Krueger is an employee of a subcontractor, she is precluded from maintaining an action under the Minnesota Human Rights Act (MHRA) for egregious sex discrimination that she alleges was inflicted upon her by a general contractor at a construction site. The section of the MHRA on which appellant's claim is based is Minn.Stat. § 363A.17 (2006), which reads a follows:

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of service:
>
> . . . .
>
> (3) to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's . . . sex. . . .

The MHRA also provides "[i]t is the public policy of this state to secure for persons in this state, freedom from discrimination" and "[t]he provisions of [the MHRA] shall be construed liberally for the accomplishment of the purposes thereof." Minn.Stat. §§ 363A.02, .04. Moreover, the MHRA provides that "[a]ny person aggrieved by a violation of this chapter may bring a civil action. . . ." Minn.Stat. § 363A.28, subd. 1. We are to give statutes their plain and ordinary meaning. Minn. Stat. § 645.16 (2006).

Here, the district court granted a motion to dismiss under rule 12 of the Minnesota Rules of Civil Procedure. Thus, we assume the facts most favorable to the claimant as set forth in the pleadings. The complaint alleges that Ms. Krueger, the sole owner-member and operator of Diamond Dust, was working at the construction site for Eagles Landing Condominiums in Wabasha. Respondent Zeman Construction Company was the general contractor on the project. Ms. Krueger's firm (her employer) was a subcontractor for sheetrocking/drywall work. Ms. Krueger claimed to have been sexually harassed by the two job supervisors employed by the general contractor and to have encountered a sexually abusive, hostile, and threatening working environment.

The alleged specifics of the discriminatory conduct include referring to Ms. Krueger as a "c—t," and "f____g b——h," directing profanity and vulgar gestures towards her family, telling her that cleaning rather than drywalling was appropriate work for her, following her to the bathroom and leaning on the bathroom door while she was inside, tracking the number of times she used the bathroom, subjecting her to physical intimidation, equipping condominium units with makeshift, exposed urinals which male construction workers used while she worked in the immediate area, suggesting that she maybe wanted a urinal painted pink for her use, ordering her to get on her hands and knees to clean up drywall material that had fallen on the protective floor covering while drywall work was in progress, and laughing at her when she began to cry at the humiliation. Male supervisors of other subcontractors were not subjected to such conduct. The respondent, as the general contractor, was informed of these incidents on several occasions but did not take corrective or remedial action. All of this conduct allegedly occurred at a job site where Ms. Krueger was present as a worker pursuant to a contract between her employer and respondent.

The Minnesota statute in its simplest, stripped-down form prohibits business practices that "discriminate in the . . . performance of the contract because of a per-

son's ... sex." Minn.Stat. § 363A.17. The conduct set forth in the complaint clearly discriminates against Ms. Krueger as a worker at the Wabasha site. There is no language in the statute that requires that Ms. Krueger be an employee of or in a direct, personal contractual relationship with the general contractor. Instead, the statute describes conduct that is prohibited, namely discriminating in the performance of the contract based on, among other things, gender. Allegedly, the discrimination here was perpetrated by the respondent, and the discrimination occurred in the performance of the construction project pursuant to contract between the general contractor and Diamond Dust as a subcontractor. Minus that contract, Ms. Krueger would not have been on the jobsite, and respondent would not have had the opportunity to sexually harass her.

The point on which this panel is divided is whether the Minnesota statute should be interpreted as requiring privity of contract. Absent statutory language or caselaw requiring privity, I would not impose such a requirement. The majority looks at the disjunctive character of the phrase "terms [or] conditions, or performance" of the contract to conclude privity is required. Because the statute still does not contain a contractual or privity requirement in "performance" claims, this analysis does not impose a privity requirement. We should simply work with the plain language.

In reaching its conclusion that privity is required, the majority heavily relies on the U.S. Supreme Court interpretation of the "make and enforce contracts" clause of 42 U.S.C. § 1981 as set forth in *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 475–76, 126 S.Ct. 1246, 1249–50, 163 L.Ed.2d 1069 (2006), for the proposition that one must have rights under a contract to bring a claim. In relevant part, section 1981 reads as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens....

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

Although both the Minnesota statute and section 1981 refer to contracts and discrimination, our statute and the federal statute are distinctly different. Section 1981 was originally enacted to assure freed slaves the equal right to contract. The definition of the "make and enforce" clause includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The operative language explicitly focuses on the contractual relationship and protecting the right to contract. In fact, the federal law is premised on the injured person's contractual right. By contrast, Minn.Stat. § 363A.17 prohibits business discrimination by the alleged offending party in its "performance of the contract." The Minnesota law focuses on discrimination by persons, including corporations, in their performance of the contract, and prohibits the alleged perpetrator from engaging in discriminatory conduct in

all its activities related to its contracts. By focusing on the alleged perpetrator, the Minnesota law does not limit protection to individuals or entities that have personally contracted with that perpetrator.

On several occasions, Minnesota courts have noted that, due to differences in statutory language, interpretation of federal antidiscrimination statutes may not be helpful in interpreting the MHRA. *Ray v. Miller Meester Adver. Inc.*, 684 N.W.2d 404, 408–09 (Minn.2004); *Kolton v. County of Anoka*, 645 N.W.2d 403, 407 (Minn. 2002); *Cummings v. Koehnen*, 568 N.W.2d 418, 422 n. 5 (Minn.1997). Because the statutes differ, the federal caselaw on this issue is not on point and should not limit the unambiguous Minnesota law.

It is noteworthy that a federal district court has recently interpreted *Domino's* as being limited to a claim under the "make, and enforce contracts" clause and allowed a claim without privity under the "full and equal benefit of all laws" clause of 42 U.S.C. § 1981. *Moonblatt v. Dist. of Columbia*, 572 F.Supp.2d 15, 25–26 (D.D.C. 2008); *Mazloum v. Dist. of Columbia Metro. Police*, 522 F.Supp.2d 24, 38 (D.D.C. 2007). In *Moonblatt* and *Mazloum*, plaintiffs brought section 1981 claims in the absence of any type of contractual relationship and the defendants, on summary judgment, argued that *Domino's* required a contractual relationship. The court allowed both claims to continue reasoning that the claims were not barred because of the full and equal benefit of all laws clause of section 1981. The court noted that the *Domino's* plaintiff failed to argue that he was entitled to relief under the full and equal benefits clause and reasoned that *Domino's* is limited to cases interpreting the make and enforce contracts clause only. This willingness to give an expan-

sive, non-privity reading to section 1981 is significant. It results in section 1981 having a reach parallel to that urged in this dissent for Minn.Stat. 363A.17. We should not interpret *Domino's* as imposing a privity requirement in deciding the reach of Minnesota law when a federal district court does not reach that conclusion in deciding section 1981 cases.

I note that the stringent requirements of privity have been eliminated as requirement to provide standing in a variety of settings. *See Minn. Mining and Mfg. Co. v. Nishika Ltd.*, 565 N.W.2d 16, 20–21 (Minn.1997) (acknowledging the legal battle to break down the barrier of "privity," which culminated in widespread adoption of strict products liability in tort); *Milbank Mut. Ins. Co. v. Proksch*, 309 Minn. 106, 115, 244 N.W.2d 105, 110 (1976) (holding privity was not required in a breach of warranty action); *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 96 n. 1, 179 N.W.2d 64, 72 n. 1 (1970) (stating commercial seller who sells defective product is liable for physical harm even if seller is not in privity with the injured person); *Dornack v. Barton Constr. Co.*, 272 Minn. 307, 317–18, 137 N.W.2d 536, 544 (1965) (standard of care owed by contractor to traveling public not fixed by terms of its contract with the state, which required erection of barricades and warning signs, but terms of contract are relevant in evaluating the reasonableness of the contractor's conduct).

In reaching our conclusion, we should be faithful to the intent of the MHRA—that it be liberally construed to achieve its purpose of freedom from discrimination allowing any aggrieved person to bring a claim. Minn.Stat. §§ 363A.02, .04, .28, subd. 1. As this case is presented to us, while working for a subcontractor pursuant to a contract with respondent, Pamela Krueger suffered

the alleged discrimination as a result of work-related conduct of respondent's employees. I would reverse dismissal of her claim.