Pamela KRUEGER, Appellant,

Diamond Dust Contracting,
LLC, Plaintiff,

v.

ZEMAN CONSTRUCTION COMPANY,
Respondent.

No. A08–206.

Supreme Court of Minnesota.

April 29, 2010.

Andrew P. Muller, Muller, Muller & Assoc., PLLC, John A. Klassen, John A. Klassen, PA, Minneapolis, MN, for appellant.

Michael Lapicola, Charles F. Weber, Aaron Von Oort, Daniel G. Prokott, Faegre & Benson LLP, Minneapolis, MN, for respondent.

Leslie L. Lienemann, Culberth & Lienemann, LLP, St. Paul, MN, Dorene R. Sarnoski, Dorene R. Sarnoski Law Office, Minneapolis, MN, for amicus curiae National Employment Lawyers Association, Minnesota Chapter.

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, MN, for amicus curiae Commissioner of Minnesota Department of Human Rights.

Dean B. Thomson, Hannah R. Stein, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for amici curiae Associated General Contractors of Minnesota and Minnesota Chamber of Commerce.

## OPINION

MAGNUSON, Chief Justice.

Appellant Pamela Krueger (Krueger) and her company, Diamond Dust Contracting, LLC (Diamond Dust) sued respondent Zeman Construction Company (Zeman) for unlawful business discrimination on the basis of sex under the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363A.17(3) (2008). The district court dismissed Krueger's personal claim and the court of appeals affirmed. We granted Krueger's petition for further review, and we affirm.

Krueger is the sole owner-member and operator of plaintiff Diamond Dust, a Minnesota limited liability company engaged in the drywall and sheetrock business. In December 2005, Diamond Dust entered into a subcontract with Zeman, agreeing to supply materials and labor for a multi-unit residential construction project in Wabasha. Diamond Dust began performing the contract in January 2006. Krueger, who personally worked on the project, alleges that Zeman's managers regularly engaged in various forms of sexual harassment and sex discrimination directed at her. The alleged harassment and discrimination included verbal abuse, physical intimidation, exposure of genitals by male managers on the worksite, and the assignment of demeaning tasks to Krueger. Krueger alleges that she reported the allegations to Zeman's management and owners, but Zeman did not take action to rectify the situation. As a result, Diamond Dust stopped performing under its contract with Zeman. Both Krueger, in her individual capacity, and Diamond Dust sued Zeman, seeking damages for unlawful business discrimination.

In response to the suit, Zeman brought two motions before the district court: (1) a motion to dismiss Krueger's business discrimination claim for failure to state a claim, and (2) a motion to transfer Diamond Dust's discrimination claim to Wabasha County, where Diamond Dust's mechanic's lien foreclosure action against Zeman is pending. The district court granted both of Zeman's motions.

As to the motion to dismiss, the district court concluded that Krueger lacked standing under the plain language of the statute because Diamond Dust, not Krueger individually, was the party to the contract with Zeman. Based on that determination, the district court dismissed Krueger's personal claim. Krueger appealed the district court's ruling dismissing her individual discrimination claim.

A divided court of appeals panel affirmed, holding that a plaintiff must have a contractual relationship with a defendant to have standing to initiate a claim of business discrimination in the performance of a contract under Minn.Stat. § 363A.17(3). *Krueger v. Zeman Constr. Co.*, 758 N.W.2d 881, 890 (Minn.App.2008). Since Krueger's company had a contractual relationship with Zeman, the alleged discriminator, but Krueger did not, the court of appeals affirmed the district court's dismissal of Krueger's personal claim. *Id.* The court of appeals' majority opinion articulated three main reasons supporting its conclusion that section 363A.17(3) applies only where a contractual relationship exists between the parties. First, the court determined that the statutory language, in light of the need for a "discernible limit" under section 363A.17(3), did not support Krueger's interpretation of the statute. *Krueger,* 758 N.W.2d at 887. Second, the court was guided in its interpretation of the MHRA by federal cases analyzing the "similar language" of the analogous federal statute, 42 U.S.C. § 1981 (2006). *Krueger,* 758 N.W.2d at 887–88. Finally, the court concluded that fairness considerations alone could not support a personal cause of action for

Krueger under section 363A.17(3). *Krueger,* 758 N.W.2d at 889–90.

The court of appeals' dissent asserted that the plain language of the statute does not include a privity requirement—specifically, that "[t]here is no language in the statute that requires that Ms. Krueger be an employee of or in a direct, personal contractual relationship with the general contractor." *Id.* at 892 (Minge, J., dissenting). Furthermore, the dissent rejected the majority's reliance on federal cases interpreting 42 U.S.C. § 1981, asserting that the statutes "are distinctly different." *Krueger,* 758 N.W.2d at 892. The dissent reasoned that the Minnesota statute focuses on the perpetrator, while section 1981 focuses on the contractual relationship. *Krueger,* 758 N.W.2d at 892–93.

### I.

■■■ Minnesota Rule of Civil Procedure 12.02(e) permits a party to move to dismiss for failure to state a claim upon which relief can be granted. In considering a Rule 12 motion, we accept the facts alleged in the complaint as true and give the nonmoving party the benefit of all favorable inferences. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). We conduct a de novo review of a Rule 12 dismissal. *Id.* Additionally, we review issues of statutory interpretation, including construction of the MHRA's provisions, de novo. *Ray v. Miller Meester Adver. Inc.,* 684 N.W.2d 404, 407 (Minn.2004).

■■■ When we interpret a statutory provision, "[we] must first determine whether the statute's language, on its face, is ambiguous." *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). We "construe words and phrases according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature." *ILHC of Eagan,*

*LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005) (citing Minn.Stat. § 645.08(1) (2004)). When possible, " 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.' " *Id.* at 419 (quoting *Owens v. Federated Mut. Implement & Hardware Ins. Co.,* 328 N.W.2d 162, 164 (Minn.1983)); accord *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999).

■■■ A statute is ambiguous when the language lends itself to more than one reasonable interpretation. *Am. Tower,* 636 N.W.2d at 312. When we conclude that a statute is ambiguous, we use the rules of statutory construction to ascertain the intent of the legislature. *ILHC of Eagan,* 693 N.W.2d at 419. However, if the statutory language is clear, we must give effect to its plain meaning. Minn.Stat. § 645.16 (2008). In such circumstances, "statutory construction is neither necessary nor permitted." *Am. Tower,* 636 N.W.2d at 312. We will not disregard "the letter of the law ... under the pretext of pursuing the spirit." Minn.Stat. § 645.16; *see also Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.,* 637 N.W.2d 270, 276 (Minn.2002).

### II.

■■■ Standing is a general jurisprudential concept. It requires that a party must have sufficient personal interest in a legal dispute so that it is appropriate to allow that party to pursue litigation. *State, by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 493 (Minn.1996). Standing exists, if, among other things, the party has suffered an injury-in-fact. *Id.* To suffer an injury-in-fact, a party must allege "a concrete and particularized invasion of a legally protected interest." *Lorix v. Crompton Corp.,* 736 N.W.2d 619, 624 (Minn.2007).

However, the ability to assert a claim under the MHRA differs. In *Potter v. LaSalle Court Sports & Health Club*, this court held that when an individual or company violates a civil rights law, "the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, in *the absence of statutory language requiring more*." 384 N.W.2d 873, 875 (Minn.1986) (emphasis added) (citation omitted) (internal quotation marks omitted); *see also Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974) (adopting the injury-in-fact test, absent legislative intent to the contrary). Therefore, although an injury-in-fact is generally sufficient to establish standing, an act of discrimination alone will not satisfy the statutory standing requirement if the language of the MHRA requires more. *See Potter*, 384 N.W.2d at 875. In other words, there may be an injury-in-fact, but no legal claim recognized by the statute.

The question here is what legal right does the statute provide, the infringement of which gives rise to a claim. We begin our analysis with the text of the MHRA.

Although section 363A.17 does not explicitly identify who may sue under its provisions, other sections of the MHRA provide guidance. First, a "person" can bring a claim under the MHRA if "aggrieved by a violation of this chapter." Minn.Stat. § 363A.28, subd. 1 (2008). Under the MHRA, a "person" includes a partnership, association, or corporation, among others. Minn.Stat. § 363A.03, subd. 30 (2008). Diamond Dust, as an LLC, qualifies as a "person" for purposes of this section.

Who is an "aggrieved" party—a party who has standing to bring a claim under the statute—is not stated expressly in section 363A.17 or otherwise in the MHRA. *See* Minn.Stat. § 363A.03 (2008) (defining other terms). However, a person is "ag-grieved" in the legal sense when she has suffered the denial or infringement of a legal right, and the MHRA allows an aggrieved person to seek "redress for an unfair discriminatory practice." Minn. Stat. § 363A.33, subd. 1 (2008).

"Unfair discriminatory practice" is defined as "any act described in sections 363A.08 to 363A.19 and 363A.28, subdivision 10." Minn.Stat. § 363A.03, subd. 48. Consequently, the set of "aggrieved" persons is defined differently in a variety of settings based on the particular form of discrimination targeted. *See, e.g.*, Minn. Stat. § 363A.08 (2008) (proscribing unfair employment practices against persons based on "race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, sexual orientation, or age"); Minn.Stat. § 363A.09 (2008) (defining real property discrimination to include discrimination based on "race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, sexual orientation, or familial status"); Minn.Stat. § 363A.11 (2008) (defining discrimination in public accommodations to include protection based on "race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex"); Minn.Stat. § 363A.12 (2008) (defining discrimination in the context of public services to include protection based on "race, color, creed, religion, national origin, disability, sex, sexual orientation, or status with regard to public assistance").

The purpose of the Minnesota Human Rights Act is to "secure for persons in this state, freedom from discrimination." Minn.Stat. § 363A.02, subd. 1(a) (2008). In interpreting the language of the MHRA, the legislature has directed that the provisions "shall be construed liberally for the accomplishment of the purposes thereof." Minn.Stat. § 363A.04 (2008);

*see also Cummings v. Koehnen,* 568 N.W.2d 418, 422 (Minn.1997). However, the MHRA achieves this purpose by specifically prohibiting certain conduct in particular contexts, and by providing varying remedies based on the particular form of discrimination targeted.

### III.

■ With these general principles in mind, we turn to the specific language of the statute at issue. Minnesota Statutes § 363A.17 provides in part:

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service:
>
> . . . .
>
> (3) to intentionally refuse to do business with, to refuse to contract with, or *to discriminate in the basic terms, conditions, or performance of the contract* because of *a person's* race, national origin, color, sex, sexual orientation, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose.

(Emphasis added.)

■ The issue before us is whether the legislature intended to grant to individual employees of a party to a contract the right to bring an action personally for discrimination in the performance of the contract. There is no specific grant of such a right in the terms of the statute. While section 363A.17 is a remedial statute and is broadly construed, *see* Minn.Stat. § 363A.04, this court has been reluctant to recognize causes of action under a statute where they do not clearly exist. *See Becker v. Mayo Found.,* 737 N.W.2d 200, 207

(Minn.2007) ("A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." (citing *Larson v. Dunn,* 460 N.W.2d 39, 47 n. 4 (Minn.1990))); *see also Bruegger v. Faribault County Sheriff's Dep't,* 497 N.W.2d 260, 262 (Minn.1993) (concluding that principles of judicial restraint preclude courts' ability to create additional causes of action outside those evident by a statute's express or implied terms). The "remedial nature" of a statute does not justify the adoption of "a meaning not intended by the legislature." *Beck v. Groe,* 245 Minn. 28, 44, 70 N.W.2d 886, 897 (1955).[1]

■ When interpreting a statute to determine if it creates a cause of action, we do not ask whether the statute imposes a limitation on an otherwise unlimited claim, but instead determine whether the statute actually *provides* a cause of action to a particular class of persons. *Cf. Greene v. Comm'r of Minn. Dep't of Human Servs.,* 755 N.W.2d 713, 722 (Minn.2008) (interpreting statute as denying individual tribal members "either the right to decline receiving employment services through the Tribe or the right to receive those services through the County" where the statute did "not contain any language that expressly grants" such rights).

■ We hold that Minn.Stat. § 363A.17(3) is unambiguous, and it does not provide a cause of action for a person not a party to a contract, the performance of which is affected by business discrimination. A plain reading of section 363A.17(3) reveals that the legislature prohibited sex

---

1. In disagreeing with our analysis, the dissent suggests, "[U]nless there is a clear indication that the legislature intended a cause of action as *narrow* as the one the majority creates, we should give effect to the broad, plain language of section 363A.17 and allow Krueger to pursue her claim." The legislature's command to broadly construe the provision does not naturally force us to conclude that the statute provides a cause of action to all persons unless there is language that narrows the protected classes. There must still be a cause of action expressed or implied in the language of the statute.

discrimination in the making or performance of a contract. Only a party to the contract can make the contract or be held legally responsible to "perform" pursuant to the contract. "Performance" is defined as "[t]he successful completion of a contractual *duty*, usu[ally] resulting in the performer's release from any past or future liability." *Black's Law Dictionary* 1252 (9th ed. 2009) (emphasis added). "Performance" presupposes a contractual obligation to perform; while a corporate party to a contract may use employees to fulfill a contract, those employees have no rights or obligations under the contract.[2] Thus, the statute only provides a cause of action to the person who is denied a contract, or discriminated against in the performance of (or terms or conditions) the contract because of sex discrimination. Although Diamond Dust performed its obligations under the contract through its employees, including Krueger, only Diamond Dust is legally obligated to satisfy the terms of its contract with Zeman. Only Diamond Dust can assert its contractual rights, just as only Diamond Dust can breach the contract.

Here, Diamond Dust had a statutory right to perform the contract without being subject to discrimination against its employees. Minn.Stat. § 363A.17(3). Discriminatory treatment of Diamond Dust's employees is a violation of the statute.

Thus, Diamond Dust, as Zeman admits, has a claim under the statute.

But we cannot read into the statute any additional rights. The rights that Krueger claims for herself are not in the language of section 363A.17(3). Instead, a plain reading of the statute supports the conclusion that the legislature intended to provide contracting parties with the right to make and perform their contracts without being subject to illegal discrimination. The legislature did not, however, provide remedies to persons other than the contracting parties, and we cannot add provisions to the statute.

Even if we were to conclude that the statute is ambiguous, application of the rules of statutory construction leads us to the same conclusion. If we accept Krueger's theory in this case, then there is virtually no limit on the persons who can sue when sex discrimination affects the performance of a contract. *See* Minn.Stat. § 645.16(6) (2008) (providing that intention of legislature can be ascertained considering "the consequences of a particular interpretation"). Under Krueger's theory, every woman employed by Diamond Dust could have an individual cause of action because of Zeman's conduct. There is no indication that the legislature intended such an expansive reading of the statute.

In their briefs, the parties discuss at length the United States Supreme Court's

**2.** We do not believe the dissent accurately characterizes our analysis of the language in this section. We do not rely on the use of the words "terms" and "conditions" to conclusively establish a contractual relationship requirement. Rather, our decision in this case rests on the language "performance of the contract." Only parties to a contract can legally perform the contract. *See, e.g., Epland v. Meade Ins. Agency Assoc.,* 564 N.W.2d 203, 207 (Minn.1997) ("In the absence of an express agreement to the contrary, a party may . . . delegate his or her duty to perform under a contract, but the original party remains liable if the performance is substantially different than performance by the original party." (internal citation omitted)). Additionally, an officer or agent of a corporation is not personally liable for that corporation's nonperformance of a contract. *Furlev Sales & Assoc. v. N. Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 26 (Minn.1982). Therefore, the "performance of the contract" language in the statute does not prescribe only when it is unlawful for a person to discriminate. It also establishes who is "aggrieved" based on the specific language of section 363A.17—it is the person whose performance of the contract is affected by the discrimination.

holding in *Domino's Pizza, Inc. v. Mc-Donald*, 546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006), which requires a plaintiff to have rights under a contract to assert a claim under 42 U.S.C. § 1981's "make and enforce contracts" clause. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts ... as is enjoyed by white citizens."

While we are guided at times by the construction that federal courts give to similar federal discrimination statutes, section 1981 is significantly different from the statute under consideration. *See Frieler v. Carlson Mktg. Group, Inc.*, 751 N.W.2d 558, 567–71 (Minn.2008) (reconciling the definition of "sexual harassment" under the MHRA with federal law and adopting the federal standard for employer liability for sexual harassment committed by a supervisor); *Cummings v. Koehnen*, 568 N.W.2d 418, 423 n. 5 (Minn.1997) (declining to follow Title VII's treatment of sexual harassment where Title VII only prohibited sex discrimination and the MHRA specifically prohibited sexual harassment). Section 1981's "make and enforce" clause clearly addresses only the right of "persons" to "make and enforce" contracts. Because the language differs significantly from our statute, it does not guide us directly. However, while the language of section 1981 is not sufficiently analogous to direct our interpretation of Minn.Stat. § 363A.17(3), we find the Court's analysis

of the policy reasons behind its reading of section 1981 instructive.[3]

In *Domino's Pizza*, the Court confronted a similar argument by a shareholder that "[a]ny person who is an 'actual target' of discrimination, and who loses some benefit that would otherwise have inured to him had a contract not been impaired" should be entitled to sue under section 1981. 546 U.S. at 478, 126 S.Ct. 1246. The Court rejected the shareholder's argument and reasoned:

> Absent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to *somebody's* contract. We have never read the statute in this unbounded—or rather, *peculiarly* bounded—way.

*Id.* at 476, 126 S.Ct. 1246. Similarly, if we read an individual cause of action into section 363A.17(3), we would be unable to articulate a clear limit on viable claims under the statute. Essentially, anyone who claims to have been harmed by discrimination in the performance of a contract would be "aggrieved" and could have standing to sue. Any bystander or employee of a sub-sub-subcontractor could sue the discriminating party who is performing terms of a contract. We do not see the legislature's intent for such a broadly sweeping statute.[4]

---

3. The dissent suggests that we "have unnecessarily grafted the United States Supreme Court's policy analysis onto the Minnesota statute," despite our conclusion that section 1981 is different from Minn.Stat. § 363A.17. As we clarify in our opinion, while we refer to the Court's analysis of policy reasons behind its reading of section 1981, we do not rely on the Court's holding and analysis in *Domino's Pizza* any further. Our policy analysis simply confirms what we have already concluded

flows from the plain reading of Minn.Stat. § 363A.17(3).

4. We have not addressed the potential liability of employers for failing to take action when its employees are harassed by third parties. Federal courts and the Minnesota Court of Appeals have addressed the issue and found that employers may be liable under such circumstances. *See, e.g., Lapka v. Chertoff*, 517 F.3d 974, 984 n. 2 (7th Cir.2008) ("Employer

We hold that Minn.Stat. § 363A.17(3) requires that a plaintiff have a contractual relationship with a defendant to have a cause of action for business discrimination in the performance of that contract. Accordingly, we affirm the decision of the court of appeals.

Affirmed.

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent. Unlike the majority, I would reverse the district court. Pamela Krueger has brought a viable claim for discrimination under Minn.Stat. § 363A.17 (2008) and is entitled to proceed with that claim. I conclude, therefore, that the district court erred when it dismissed Krueger's claim by granting Zeman Construction Company's Rule 12 motion to dismiss.

Krueger alleges in her complaint that Zeman discriminated against her on the basis of sex during the performance of the contract between Diamond Dust Contracting, LLC, and Zeman. Zeman responded to the complaint and moved to dismiss for failure to state a claim under Rule 12 of the Minnesota Rules of Civil Procedure.

Krueger alleges that she is the sole owner-member and operator of Diamond Dust and that she was working at the construction site for the Eagles Landing Condominiums in Wabasha. Zeman was the general contractor on the Eagles Landing project. Krueger's firm, Diamond Dust, which was also her employer, was a subcontractor for sheetrocking and drywall work on the project. Krueger claims that while working at the job site she was sexually harassed by the two job supervisors employed by Zeman and that she encountered a sexually abusive, hostile, and threatening working environment.

Krueger alleges the specifics of a long list of discriminatory conduct. This conduct included: (1) referring to Krueger as a "c--t" and "f-----g b---h," (2) directing profanity and vulgar gestures toward her family, (3) telling her that cleaning rather than drywalling was the appropriate work for her, (4) following her to the bathroom and leaning on the bathroom door while she was inside, (5) tracking the number of times she used the bathroom, (6) subjecting her to physical intimidation, (7) equipping condominium units with exposed urinals that male construction workers used while she worked in the immediate area, (8) suggesting that she maybe wanted a urinal painted pink for her use, (9) ordering her to get on her hands and knees to clean up drywall material that had fallen on the protective floor covering while drywall work was in progress, and (10) laughing at her when she began to cry at the humiliation caused by Zeman's employees. Male supervisors of other subcontractors were not subjected to similar conduct. Zeman, as the general contractor, was informed of these incidents on several occasions but did not take any corrective or remedial action. All of this conduct allegedly occurred at a job site where Krueger

---

liability can be imposed when the harassment is committed by ... third parties[.]" (internal citation omitted)); *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1258 n. 2 (11th Cir.2003) ("An employer may be found liable for the harassing conduct of its customers....."); *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 968 (9th Cir.2002) ("In this circuit, employers [may be held] liable for harassing conduct by non-employees....."); *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1244 (10th Cir. 2001) ("[A]n employer may be responsible for sexual harassment based upon the acts of non-employees."); *Costilla v. State,* 571 N.W.2d 587, 592 (Minn.App.1997) (holding that the "MHRA may impose liability upon an employer when it is aware that its employee is subject to sexual harassment by a non-employee, yet fails to take timely and appropriate action to protect its employee."). Since no such claim is before us, we do not address the issue further.

was present as a worker fulfilling a contract between Diamond Dust and Zeman.

Krueger brought a discrimination claim under the MHRA. The district court dismissed Krueger's action on a Rule 12 motion by Zeman, concluding that Krueger lacked standing to pursue her business discrimination claim because she was not a party to a contract with Zeman. A divided panel of the court of appeals affirmed. *Krueger v. Zeman Constr. Co.*, 758 N.W.2d 881, 889–90 (Minn.App.2008). Krueger appealed to our court for relief.

Because Krueger is appealing her claim's dismissal pursuant to a Rule 12 motion, we assume the truth of the allegations set forth in her pleadings. Therefore, the only issue before us on this appeal is whether Krueger has stated a claim under Minn.Stat. §§ 363A.17 and 363A.28 (2008).

Statutory interpretation is a question of law, which we review de novo. *Frieler v. Carlson Mktg. Group, Inc.*, 751 N.W.2d 558, 566 (Minn.2008). The goal of statutory interpretation is to ascertain the legislature's intent. Minn.Stat. § 645.16 (2008). When the plain meaning of a statute is clear, a court must apply its plain language. *Id.*

The purpose of the MHRA is to "secure for persons in this state, freedom from discrimination." Minn.Stat. § 363A.02, subd. 1(a) (2008). The language of the Act specifically directs us to construe the Act broadly by providing that the MHRA "shall be construed liberally for the accomplishment of the purposes thereof." Minn. Stat. § 363A.04 (2008). With these principles of construction in mind, I turn to an analysis of the relevant provisions of the MHRA.

The MHRA provides that:

It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service ... (3) to discriminate in the basic terms, conditions, or performance of the contract because of a person's race, national origin, color, sex, sexual orientation, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose.

Minn.Stat. § 363A.17(3). By its plain language section 363A.17(3) forbids discrimination against a person in the performance of a contract on the basis of sex. Here, it is uncontested that Krueger alleged sufficient discrimination on the basis of sex by Zeman during the performance of a contract to which Zeman was a party. Section 363A.17(3) does not require more.

The point on which the majority and I disagree is whether Minn.Stat. § 363A.17(3) should be interpreted as requiring a contractual relationship between the discriminator and the person suffering from discrimination. Because the MHRA never mentions a contractual-relationship requirement, I would not impose such a requirement.

Section 363A.28 contains the provisions of the MHRA that tell us who may make a claim for discrimination. To have standing to pursue a discrimination claim under the MHRA, "the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, in the absence of statutory language requiring more." *Potter v. LaSalle Court Sports & Health Club*, 384 N.W.2d 873, 875 (Minn.1986) (citation omitted) (internal quotation marks omitted). An "aggrieved" person may bring a claim under the MHRA when she has been injured by unlawful discrimination. Minn. Stat. § 363A.28. The specific question for us to consider is whether the MHRA forbids the type of discrimination Krueger alleges.

The majority looks at the use of the words "terms" and "conditions" and the phrase "performance of the contract" in section 363A.17(3) and quickly concludes

that a contractual relationship with the discriminating entity is required for an injured person to bring a claim for business discrimination under the MHRA. This analysis is fundamentally flawed. Section 363A.17(3) addresses only the perpetrator of the discrimination rather than the victim. The section makes it unlawful "to discriminate in the basic terms, conditions, or performance of the contract." Minn.Stat. § 363A.17(3). I agree with the majority that the inclusion of "terms," "conditions," and "performance of the contract" in section 363A.17(3) allows claims of discrimination only against a party to a contract. But the use of "terms," "conditions," and "performance" indicates only when it is unlawful for a person to discriminate. Those words tell us nothing about the victim of the discrimination. They do not place a limit on who may be "aggrieved" by such conduct. Therefore, I conclude that the use of these words does not place a limit on who may bring a claim for discrimination under the section.

For the same reason, the majority's definition of the term "performance" is unavailing. The majority asserts that only a party to the contract can perform a contract, and therefore section 363A.17(3) requires a contractual relationship with the discriminating entity. But again, the plain language of section 363A.17(3) only describes what constitutes unlawful conduct; it does not address who may pursue a claim for injury related to such conduct. By making the conduct unlawful, the MHRA creates a right for a person to be free from discrimination during the performance of a contract. A person is aggrieved by such discrimination when she is injured by it. The plain language of the MHRA places no further limits, and we should not seek to artificially impose them, especially given the legislature's mandate to construe the MHRA liberally.

Counter to this mandate, the majority reaches its construction of section 363A.17 because "[t]here is no indication that the legislature intended such an expansive reading of the statute." But the majority approaches its construction of this section backwards. We are to interpret the MHRA liberally to affect its purpose of protecting the people of this state from discrimination. So unless there is a clear indication that the legislature intended a cause of action as *narrow* as the one the majority creates, we should give effect to the broad, plain language of section 363A.17 and allow Krueger to pursue her claim.[1]

The majority's limited statutory construction is too narrow and appears to provide a veneer for the majority's true concern with my interpretation of section 363A.17—that my interpretation would create some sort of slippery slope for business discrimination claims under the MHRA. But Krueger's claim does not stand on a slope, much less a slippery one. Rather, she alleges that while working to fulfill a construction contract, she was discriminated against by one of the parties to that contract. Without that contract, Krueger, as Diamond Dust's employee, would not have been on the job site, and Zeman would not have had the opportunity to discriminate against her. Indeed, the vast majority of workers on a job site are not in a direct contractual relationship with the general contractor, but may well

---

1. The majority asserts in a footnote that "[t]he legislature's command to broadly construe the [MHRA] does not naturally force us to conclude that the statute provides a cause of action to all persons." I agree. It is the plain language of section 363A.17 that should force us to recognize Krueger's claim. The legislature's mandate for broad construction merely reinforces what should be clear from the language in the statute.

be subject to discrimination. The majority minimizes this reality. Discrimination occurs on a personal level to real people based on personal traits or statuses, and companies may only perform contracts through the work of human beings—persons under the statute.

Further, though the majority correctly states that section 1981 of the federal statutes is significantly different from Minn. Stat. § 363A.17, the majority appears to have unnecessarily grafted the United States Supreme Court's policy analysis onto the Minnesota statute. The majority declines to allow Krueger's claim to continue because to do so would be to read section 363A.17 "in a peculiarly bounded" way. *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006) (emphasis omitted). But it is the majority's stark boundary that is peculiar. Although the MHRA defines "person" to include entities, entities do not have a race, national origin, color, sex, sexual orientation, or disability. *See* Minn.Stat. § 363A.03, subd. 30 (2008) (defining "person"). Only human persons have these characteristics. Given the reality of a construction site, the majority would preserve claims for entities but deny them to human beings.

The legislature has specifically directed us to interpret the MHRA liberally to accomplish its purpose. Minn.Stat. § 363A.04. The purpose of the MHRA is to secure freedom from discrimination in employment, housing, public accommodation, public services, and education. Minn.Stat. § 363A.02, subd. 1(a). The legislature recognized that discrimination "threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy." *Id.,* subd. 1(b). Imposing a contractual-relationship requirement creates a gap in the law such that some persons are subject to discrimination in the workplace without a remedy against the discriminating parties and some businesses are able to discriminate with impunity. If her allegations are true, Krueger has a right as a person who has been discriminated against to seek redress against the discriminating party. Her ability to work and perform under the contract is contingent on her ability to work free from discrimination. She should be allowed to go forward with her claim; therefore, I would reverse the district court and allow her to do so.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

MEYER, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.